UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>CARLOS MIGUELS OF<br>CASTLE ROCK, LLC<br>EIN: 20-8703805<br><br>Debtor. | )<br>)  Case No. 18-18485-JGR<br>)<br>)  Chapter 11<br>)<br>)<br>) |

## MOTION FOR AUTHORITY TO USE CASH COLLATERAL
## ON AN INTERIM AND FINAL BASIS

The Debtor and Debtor in Possession, Carlos Miguels of Castle Rock, LLC ("Debtor"), by and through its attorneys, Buechler & Garber, LLC., moves the Court pursuant to 11 U.S.C. § 363(c)(2) and Bankruptcy Rules 4001(b) and 9014 for entry of an order authorizing the Debtor's interim and final use of cash collateral, setting a final hearing on the use of cash collateral, and providing adequate protection to properly perfected secured creditors, and as grounds therefor states as follows:

### BACKGROUND

1. The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on September 28, 2018 (the "Petition Date"). The Debtor remains a Debtor-in-Possession.

2. The Debtor is a Mexican restaurant operating in Castle Rock. The Debtor is part of a restaurant chain throughout Colorado. Each restaurant operates as a separate Limited Liability Company. There are a total of four restaurants, one located in Colorado Springs, one in Castle Rock, one in Frisco and one in Littleton.

3. The bankruptcy filing was prompted due to the Debtor's debt service. Three of the four Carlos Miguel restaurant group maintains a secured debt obligation which draws upon its credit card receipts. The Debtor cannot service the debt associated with the loan and operate profitably. Further, the loan substantially exceeds the value of its collateral. The secured loan is crippling three of the four restaurants. Each of the four restaurants have filed companion Chapter 11 cases. The Debtor also maintains tax debt which it cannot immediately satisfy. The restructuring of the Debtor's debts will allow it to operate profitably.

4. The Debtor maintains one primary secured loan which lien arising therefrom could encumber the Debtor's "cash collateral" as the term is defined in Bankruptcy Code § 363. The lien is generally described as follows:

a. Loan agreement with Timberland Bank (captioned Merchant Agreement) dated February 1, 2007. The borrower under the loan is identified as Carlos Miguels of Castle Rock, LLC. The loan is guaranteed by, in additional to individual guarantors, Carlos Miguels of Country Club Corners, LLC and Carlos Miguels of Frisco, LLC. All three restaurant entities granted a lien in substantially all of their assets, including inventory.

5. The amount owing to Timberland Bank, pursuant to the Debtor's books and records, is approximately $192,409.28.

6. The following UCC-1 financing statements have been filed with the Colorado Secretary of State with respect to the Debtor:

   a. Timberland Bank, filed November 15, 2017, associated with the debt detailed above.
   b. Coors Distributing Company, filed January 22, 2014. The Debtor asserts there is no debt associated with this UCC-1.
   c. Salvador Torres, filed September 19, 2018. The Debtor asserts there is no security agreement associated with this obligation.

7. Based on the foregoing, any of the above may have a secured lien position on the Debtor's funds and revenues that constitute cash collateral as the term is defined in the Bankruptcy Code.

8. The Debtor's total asset value as of the Petition Date is approximately $21,892.35. The Debtor does not have and does not generate accounts receivable The Debtor's cash on hand and in bank accounts as of the Petition Date is approximately $0. The value of the Debtor's inventory on the Petition Date is $20,387.25.

9. The Debtor will continue to generate revenues of not less than $96,000 per month. Thus, the Debtor is replacing its cash in the ordinary course of its operations. The Debtor consistently replaces its inventory as necessary.

10. Accordingly, the secured interest of any secured creditors in the Debtor's assets is adequately protected against the Debtor's ongoing use of cash.

**RELIEF REQUESTED**

11. The Debtor plans to continue operation of its business throughout the Chapter 11 case and propose a Plan of Reorganization which provides for the continuation of the Debtor's business. It is only through a Plan that unsecured creditors will see a recovery on account of their claims.

12. In order to pay necessary operating expenses, the Debtor must immediately use cash collateral in which Secured Creditors may have an interest. The Debtor proposes to use cash collateral on an interim basis until such time as the Court schedules a final hearing on the use of cash collateral. At the final hearing, the Debtor will seek relief to use cash collateral over six months pursuant to a budget which is attached hereto. On an interim basis over the next 30 days and on a six month basis, the Debtor has prepared a budget setting forth its expected revenues and cash use. A copy of the budget is attached hereto and incorporated herein as Exhibit A ("Budget"). The Debtor proposes to meet the Budget subject to the ability to deviate from the Budget by up to 15% per line item, per month, plus all fees owed to the U.S. Trustee.

13. The Budget reflects a conservative analysis of the Debtor's income and expenses over the projected periods.

14. The majority of the Debtor's revenues and available cash are derived from its restaurant operations. The Debtor must utilize its inventory, generally comprised of perishable foods items and alcohol, in the operations of the restaurant and use the cash derived therefrom. Without the use of cash collateral, the Debtor will have insufficient funding for business operations. Therefore, the Debtor's use of cash collateral during the interim period is necessary to avoid immediate and irreparable harm to the estate. Without the use of cash collateral, the Debtor will not be able to pay employees, utilities, rent and other costs associated with operating the business.

15. The Debtor will be replacing its inventory, cash, and cash equivalents in the course of its daily operations and therefore the collateral base will remain stable and will improve over time. The Debtor's cash position is projected to be positive after meeting expenses over the budgeted period.

16. In order to provide adequate protection for the Debtor's use of cash collateral to, to the extent any secured creditor is properly perfected in cash collateral, the Debtor proposes the following:

      a.      The Debtor will provide a replacement lien on all post-petition accounts and cash equivalents to the extent that the use of the cash collateral results in a decrease in the value of the collateral pursuant to 11 U.S.C. § 361(2);

      b.      The Debtor will maintain adequate insurance coverage on all personal property assets and adequately insure against any potential loss;

      c.      The Debtor shall provide to such creditor all periodic reports and information filed with the Bankruptcy Court, including debtor-in-possession reports;

      d.      The Debtor will only expend cash collateral pursuant to the Budget subject to reasonable fluctuation by no more than 15% for each expense line item per month, plus all fees owed to the U.S. Trustee;

      e.      The Debtor will pay all post-petition taxes; and

      f.      The Debtor will retain in good repair all collateral in which any secured creditor has an interest.

17. Should the Debtor default in the provision of adequate protection, the Debtor's approved use of cash collateral will cease and properly perfected secured creditors will have the opportunity to obtain further relief from this Court.

18. Approval of the Debtor's use of cash collateral in accordance with this Motion and pursuant to the Budget, Exhibit A, is, on an interim basis and a final basis, in the best interest of the Debtor, its creditors and the estate as it will allow the Debtor to maintain its ongoing business operations, allow the Debtor to generate revenue, and provide the Debtor with an opportunity to propose a meaningful Plan.

19. The Debtor requests authority to extend the six month budgeted cash collateral use period on notice with opportunity for a hearing solely to secured creditors and the U.S. Trustee by providing such parties with new budgets for additional monthly periods.

20. Without the immediate use of cash collateral, the Debtor will not be able to fund ongoing business operations. The Debtor therefore respectfully requests that the Court set an emergency hearing for the consideration of the interim use of cash collateral and continue such hearing as may be needed to allow for extensions of interim use.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, a proposed form is filed herewith, authorizing the Debtor's use of cash collateral in accordance with this Motion,

authorize the Debtor to provide adequate protection to any properly perfected secured party in the form of that set forth herein, and for such further and additional relief as to the Court may appear proper.

DATED: September 28, 2018					Respectfully submitted,

							By: /s/ Aaron A. Garber
								Aaron A. Garber #36099
								Buechler & Garber, LLC
								999 18th Street
								Suite 1230S
								Denver, CO 80202
								Telephone: (720) 381-0045
								Telecopy: (720) 381-0382
								Email: aaron@bandglawoffice.com

**EXHIBIT A**

# CARLOS MIGUELS FY 2018/2019 BUDGET WORKSHEET
## CARLOS MIGUELS OF CASTLE ROCK LLC

| | JAN 2019 | % | FEB 2019 | % | MARCH 2019 | % | OCTOBER 2018 | % | NOVEMBER 2018 | % | DECEMBER 2018 | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RESTAURANT FOOD SALES | 76,000 | 74.5% | 75,000 | 72.8% | 99,000 | 72.8% | 70,000 | 72.9% | 76,000 | 71.0% | 86,000 | 73.5% |
| TOTAL FOOD SALES | 76,000 | 74.5% | 75,000 | 72.8% | 99,000 | 72.8% | 70,000 | 72.9% | 76,000 | 71.0% | 86,000 | 73.5% |
| RESTAURANT BEVERAGE SALES | 26,000 | 25.5% | 28,000 | 27.2% | 37,000 | 27.2% | 26,000 | 27.1% | 31,000 | 29.0% | 31,000 | 26.5% |
| TOTAL BEVERAGE SALES | 26,000 | 25.5% | 28,000 | 27.2% | 37,000 | 27.2% | 26,000 | 27.1% | 31,000 | 29.0% | 31,000 | 26.5% |
| OTHER INCOME | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| TOTAL REVENUE | 102,000 | 100.0% | 103,000 | 100.0% | 136,000 | 100.0% | 96,000 | 100.0% | 107,000 | 100.0% | 117,000 | 100.0% |
| FOOD COST | 19,760 | 26.0% | 19,500 | 26.0% | 25,740 | 26.0% | 20,300 | 29.0% | 19,760 | 26.0% | 22,360 | 26.0% |
| BEVERAGE COST | 4,940 | 19.0% | 5,320 | 19.0% | 8,140 | 22.0% | 4,940 | 19.0% | 5,890 | 19.0% | 6,200 | 20.0% |
| TOTAL FOOD & BEVERAGE COST | 24,700 | 24.2% | 24,820 | 24.1% | 33,880 | 24.9% | 25,240 | 26.3% | 25,650 | 24.0% | 28,560 | 24.4% |
| PAYROLL | 24,480 | 24.0% | 24,720 | 24.0% | 29,920 | 22.0% | 22,080 | 23.0% | 24,610 | 23.0% | 28,080 | 24.0% |
| PAYROLL RELATED | 2,448 | 10.0% | 2,472 | 10.0% | 2,992 | 10.0% | 1,766 | 8.0% | 2,461 | 10.0% | 2,808 | 10.0% |
| TOTAL PAYROLL & RELATED | 26,928 | 26.4% | 27,192 | 26.4% | 32,912 | 24.2% | 23,846 | 24.8% | 27,071 | 25.3% | 30,888 | 26.4% |
| CONTROLLABLES | 8,160 | 8.0% | 8,240 | 8.0% | 9,520 | 7.0% | 10,560 | 11.0% | 11,770 | 11.0% | 12,870 | 11.0% |
| UTILITIES | 4,080 | 4.0% | 4,120 | 4.0% | 4,760 | 3.5% | 3,840 | 4.0% | 4,280 | 4.0% | 4,446 | 3.8% |
| ADVERTISING & PROMOTIONS | 1,530 | 1.5% | 1,545 | 1.5% | 1,224 | 0.9% | 1,440 | 1.5% | 1,605 | 1.5% | 1,755 | 1.5% |
| TOTAL CONT., UTILITIES AND A & P | 13,770 | 13.5% | 13,905 | 13.5% | 15,504 | 11.4% | 15,840 | 16.5% | 17,655 | 16.5% | 19,071 | 16.3% |
| GOP | 36,602 | 35.9% | 37,083 | 36.0% | 53,704 | 39.5% | 31,074 | 32.4% | 36,624 | 34.2% | 38,481 | 32.9% |
| PROPERTY TAXES | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| RENT | 13,000 | 12.7% | 13,000 | 12.7% | 13,000 | 12.7% | 13,000 | 13.5% | 13,000 | 12.1% | 13,000 | 11.1% |
| CAMS | 3,166 | 3.1% | 3,166 | 3.1% | 3,166 | 3.1% | 3,166 | 3.3% | 3,166 | 3.0% | 3,166 | 2.7% |
| EQUIPMENT LEASES | 550 | 0.5% | 550 | 0.5% | 550 | 0.5% | 550 | 0.6% | 550 | 0.5% | 550 | 0.5% |
| RESTAURANT PROFIT | 19,886 | 19.5% | 20,367 | 19.8% | 36,988 | 27.2% | 14,358 | 15.0% | 19,908 | 18.6% | 21,765 | 18.6% |
| OWNERSHIP WAGES | 3,333 | 3.3% | 3,333 | 3.2% | 3,333 | 2.5% | 3,333 | 3.5% | 3,333 | 3.1% | 3,333 | 2.8% |
| MARKETING DEPARTMENT | 1,041 | 1.0% | 1,041 | 1.0% | 1,041 | 0.8% | 1,041 | 1.1% | 1,041 | 1.0% | 1,041 | 0.9% |
| LEGAL FEES | 2,000 | 2.0% | 2,000 | 1.9% | 2,000 | 1.5% | 2,000 | 2.1% | 2,000 | 1.9% | 2,000 | 1.7% |
| CORPORATE OFFICE RENT AND EXPENSES | 1,250 | 1.2% | 1,250 | 1.2% | 1,250 | 0.9% | 1,250 | 1.3% | 1,250 | 1.2% | 1,250 | 1.1% |
| OTHER DIVISIONAL EXPENSES | 350 | 0.3% | 350 | 0.3% | 350 | 0.3% | 350 | 0.4% | 350 | 0.3% | 350 | 0.3% |
| TOTAL DIVISIONA EXPENSES | 7,974 | 7.8% | 7,974 | 7.7% | 7,974 | 5.9% | 7,974 | 8.3% | 7,974 | 7.5% | 7,974 | 6.8% |
| PBT $ | 11,912 | 11.7% | 12,393 | 12.0% | 29,014 | 21.3% | 6,384 | 6.6% | 11,934 | 11.2% | 13,791 | 11.8% |